SAM MCFALL v. THE STATE.

No. 23550. Delivered February 10, 1947.
Rehearing Denied March 26, 1947.

*C. O. McMillan,* of Stephenville, for appellant.

*Gean Turner,* District Attorney, of Cleburne, *Alfred M. Clyde,* District Attorney, and *W. E. Myres,* Assistant District Attorney, both of Ft. Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, two· years in the penitentiary.

The deceased, Vernon Franklin Tatum, known as Bud Tatum, thirty-seven years of age, single, six feet in height and weighing about one hundred ninety pounds, resided with his mother in the town of Glen Rose across the street from the home of Emmett McFall, the son of appellant. Deceased and his mother obtained water piped across their side of the street from a well to the rear of the Emmett McFall residence. Some time prior to the homicide this water pipe had been broken during the grading of the street, necessitating deceased's carrying water from the well and passing along and by the Emmett McFall residence.

The wife of Emmett McFall testified to acts and conduct on the part of deceased towards her which she considered insulting and which she reported to her husband, who, she says, made a report thereof to the officers. Upon the day of the killing and just shortly prior thereto, she reported to her husband

the fact that a few days prior deceased had come into their home, insulted her, and attempted to "grab" or take hold of her.

Witnesses testified that deceased bore a bad reputation for decency and morality in his conduct towards women. Three women, disinterested witnesses, testified to specific instances of insulting conduct by deceased towards them. A married daughter of appellant testified to such conduct towards her.

Sam McFall (appellant) knew of the reputation of the deceased and the conduct of deceased towards his daughter-in-law and daughter and had complained to the officers, at his son's request. Three days before the killing, as appellant was about to enter a grocery store in Glen Rose, according to appellant's testimony, deceased, after cursing and abusing him, made an unprovoked attack on him. On that occasion, Emmett McFall pulled deceased off his father.

The foregoing is the situation existing on the day of the killing.

According to the testimony of Mrs. Tatum, his mother, deceased left home walking to town shortly after noon, on Sunday, March 17, 1946. Emmett McFall was working on his car and as deceased walked by, Emmett threw a rock, striking deceased on the hand and then attacked him with a hammer. Deceased took the hammer from Emmett and, at her request, handed it to his mother and proceeded towards town. After deceased left, Emmett was heard to say, "I will get him," and got into his car and drove to the home of his father, who lived about two hundred yards up the road, in which direction deceased had gone.

According to the witness Hulsey, Emmett, upon arriving at the home of appellant, got out of the car, told his father that deceased had been up to his home again and jumped on him and that he (Emmett) was going to kill him. Emmett had a gun in his hand at that time.

Appellant went into his house, returned with a hammer, got into his car, with Emmett driving, and drove towards town and in the direction deceased had gone. They overtook deceased at Tinnin's store. As to what then happened, we quote from the testimony of the witness Tinnin, the owner and operator of the store, as follows:

"I saw Sam McFall there that day, and also saw Emmett McFall there. I saw Bud Tatum there. The first thing that attracted my attention was loud voices. I was reading the morning paper when I heard the loud voices. The shade to the window there that faces the east was down, and when I heard the loud voices I raised the shade and looked out. When I looked out I saw Mr. Sam McFall strike at this fellow Bud Tatum with a hammer. I then laid down my paper and got up and started out there. I had to go around and come out on this concrete walk that leads from my porch directly into the driveway. When I got outside of my residence and came around there, Sam McFall had Bud Tatum right around the neck, with a lock on his neck, and was pulling him right across the driveway up to this window between the west side of the door and the store and Sam McFall was pushing Bud Tatum right up against this window before I got to him. I was about half way from the house to this place when Emmett McFall stepped over in the driveway, and when he stepped over in the driveway he brought up a twenty two target. You show me a twenty two target now, and that looks like the one that Emmett McFall had there at that time. I suppose Emmett McFall had the gun down this way, but he kinda brought it up like this. (Demonstrates) When he did that I said, 'My God, boy, don't do that.' He looked at me a little bit and he said 'he asked for it.' I saw Emmett McFall when he shot Bud Tatum. When he shot Bud Tatum, Sam McFall had Tatum locked around the neck, and kinda bent over like this, and Emmett McFall just stuck the gun right in his side and pulled the trigger."

Upon cross-examination the witness Tinnin testified:

"It was Emmett that shot Tatum, and not Sam. I never heard Sam McFall tell Emmett McFall to shoot Bud Tatum. Sam McFall was not in a position to see what Emmett McFall was doing. Sam had his back to Emmett. I didn't hear Sam McFall say one word of encouragement for him to shoot that man."

Under the trial court's charge, appellant's guilt was made to depend upon an application of the law of principals in one of three particulars, which were: (a) that appellant and Emmett McFall acted together in the commission of the offense; or (b) that appellant, being present and knowing Emmett McFall's unlawful intent, aided him by acts or encouraged him by words in the commission of the offense; or (c) that appellant agreed to the commission of the offense and was present at the commission thereof.

In connection with said charge, the converse of the law of principals was applied and the jury were instructed, in effect, that appellant's mere presence at the commission of the offense would not authorize his conviction and in no event would a conviction be authorized unless the jury believed beyond a reasonable doubt that appellant was guilty as a principal in the partuculars above pointed out.

In addition to the foregoing, the jury were specially instructed, as follows:

"You are further instructed that even though Emmett McFall intended to kill Vernon Franklin Tatum, nevertheless you cannot convict the defendant, Sam McFall, in this case unless you further find and believe from the evidence that the defendant, Sam McFall, intended to kill Vernon Franklin Tatum or intended that his son, Emmett McFall, should do so, and if you fail to so find from the evidence beyond a reasonable doubt you will give the defendant the benefit of such doubt and find him not guilty."

A charge upon circumstantial evidence, applied to appellant's guilt as a principal, was given.

When the trial court's charge is considered as a whole, it will be noted that appellant's guilt was ultimately made to depend upon an express finding by the jury that appellant either intended to kill the deceased or intended that his son, Emmett McFall, should do so.

We are of the opinion that the facts warranted the jury's conclusion of guilt.

An extended statement of the defensive testimony is not deemed called for. It is sufficient to say that in obedience thereto the trial court submitted self-defense, both from the standpoint of appellant's acting in defense of himself and of his son, and also of the right of the son to defend his father from a deadly attack, as well as an attack less than deadly, on the part of the deceased.

Appellant was positive in his testimony that what he did on the occasion of and at the time of the killing was with the sole purpose, aim, and intent of preventing trouble between his son and the deceased and to prevent the killing of one by the other. He denied an intent to kill the deceased and also denied that

he agreed thereto or aided or encouraged his son in any particular. Appellant insists that under such testimony, as well as the facts as a whole, he was entitled to have the jury affirmatively instructed, from his standpoint, to the effect that if he acted with the purpose and intent only of preventing a killing he would not be guilty; also, that if the killing was upon or the result of an independent impulse of the son, disconnected with an intent, motive, knowledge, or agreement on the part of the appellant, he would not be guilty.

The trial court refused to so instruct the jury, over proper exceptions and objections to the court's charge.

Appellant was entitled to an affirmative presentation of his defenses. The question before us, then, is whether or not the charge of the court did so.

The answer to this question turns upon the construction to be given the charge—above quoted—wherein appellant's guilt was made to depend upon his intent to kill or his intent that the son kill the deceased.

Under that charge, if appellant, by his acts and conduct, intended to kill the deceased, he was not and could not have been intending to prevent the killing of the deceased. If appellant intended that his son, Emmett, kill the deceased, then the act of the son became the act of the appellant—and this, whether the act of the son was deliberate or upon an independent impulse of his own.

So, in the light of said charge, the jury, in order to convict the appellant, were required to find against the defensive theory. The verdict of guilty by the jury shows that they did so.

What appellant terms his defensive theories, when considered in the light of the charge of the court, amounted only to a denial of guilt.

We are constrained to conclude, therefore, that under the charge, as given, appellant's rights were fully protected before the jury.

Other exceptions and objections to the court's charge need not be discussed because we are of the view that these are covered by what has been heretofore said.

Finding no reversible error, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

We have reconsidered the questions submitted in appellant's motion for rehearing and find ourselves in agreement with the original opinion herein. The questions have been thoroughly discussed and we do not consider it necessary to write further in order to express the view of the court.

Appellant's motion for rehearing is overruled.

HAWKINS, Presiding Judge, absent.